**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

Jolita Jean,

      Petitioner,

      v.                                    Case No. 2:26-cv-02571-BCL-atc

Christopher Bullock,
Acting Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

## ORDER DENYING PETITION UNDER § 2241

Petitioner Jolita Jean, a noncitizen, filed a petition under 28 U.S.C. § 2241 seeking her release from detention in the custody of Immigration and Customs Enforcement ("ICE"). Doc. 1. For the reasons that follow, the Petition is **DENIED.**

### BACKGROUND

Petitioner is a citizen of Haiti. Doc. 8-2 at 1. On June 9, 2024, Petitioner "applied for admission into the United States from Mexico at the San Ysidro Pedestrian West Point of Entry." *Id.* at 2. At the time, a Customs and Border Patrol Officer determined Petitioner was "inadmissible to the United States pursuant to" Title 8 United States Code Section 1182(a)(7)(A)(i)(I) because "at the time of application for admission," she was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." Doc. 8-2 at 2; Doc. 8-1 at 1, 4.

At the time she applied for admission (June 9, 2024) Petitioner was served with a Notice to Appear before an immigration judge on April 9, 2026. Doc. 8-1 at 1; Doc. 8-2 at 2. At the same

time, Petitioner was also "paroled into the United States, pending a hearing with an Immigration Judge," under the "CBP One processing program." Doc. 8-2 at 2; *see* Doc. 10 at 8 (Petitioner stating she "appl[ied] for admission through CBP One").

On December 21, 2025, Petitioner was arrested for evading arrest. Doc. 8-3. After conviction on January 8, 2026, she was taken into ICE custody. Doc. 1 at 2; Doc. 8 at 2; Doc. 10 at 1. An immigration judge denied her request for a bond/custody redetermination because she is "an arriving alien." Doc. 8-4. Currently, Petitioner is detained at the West Tennessee Detention Facility in this District, with a status report date for removal proceedings set for June 17, 2026. Doc. 1 at 7; Doc. 8 at 2. She represents that she has an "asylum application pending." Doc. 1 at 3.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge her detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## ANALYSIS

Petitioner's failure to exhaust her administrative remedies dooms her statutory claim, which in any event fails on its merits. And Petitioner has not shown that her statutorily mandated detention offends the Due Process Clause of the Fifth Amendment.

**I.    Petitioner's claim challenging application of 8 U.S.C. § 1225.**

**A. Petitioner's failure to exhaust her administrative remedy precludes relief on her statutory claim.**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v.*

*Madigan*, 503 U.S. 140, 144 (1992). Both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted); *see also Smith v. United States Sec. & Exch. Comm'n*, 171 F.4th 798, 811 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation.").

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency *can* provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith*, 171 F.4th at 810 (emphasis added).[1] And, here, while an individual immigration judge initially found he did not have the jurisdiction under statute to redetermine Petitioner's custody or bond, the Board of Immigration Appeals ("BIA") could certainly change course upon "appellate" review within the Executive Branch. If Petitioner is correct on her statutory claims, she is depriving the BIA of "the opportunity to correct its own mistakes" and "produce a useful record for subsequent judicial consideration." *See Woodford*, 548

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 171 F.4th at 808 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

U.S. at 89. Petitioner's statutory claim is thus barred by the exhaustion doctrine and must be rejected for that reason alone.

**B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.**

Even if it were not barred by the exhaustion doctrine, Petitioner's statutory claim fails on the merits. Like many recent cases, the statutory claim in this case turns on whether Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). Section 1226(a) provides that an "alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," but that the alien "may" be "release[d] on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). The other provision, Section 1225(b)(2)(A), provides for mandatory detention:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) further instructs:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

Section 1225(b)(2)(A)'s mandatory detention provision controls. The Court is not writing on a blank slate: The Sixth Circuit recently addressed the meaning of Section 1225(b)(2)(A), and its interplay with Section 1226(a), in *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026). In *Lopez-Campos*, the Sixth Circuit held that, despite the broad language of Section 1225(b)(2)(A), Section 1226(a)'s permissive detention provision applies to an alien "detained within the interior of the United States who never affirmatively applied for admission"

4

(as contrasted with merely opposing removal). *Id.* at *2. The Sixth Circuit reasoned that "[n]oncitizens . . . who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry[ ] are not 'seeking admission'" under Section 1225. *Id.* at *4. The undersigned reached the opposite conclusion in a string of decisions arising in similar contexts, but the Court must and will faithfully follow the decisions of the Sixth Circuit unless and until they are overruled, because "vertical stare decisis is absolute." *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part).

Applying the holding of *Lopez-Campos* here, Petitioner is subject to mandatory detention under Section 1225(b)(2)(A). While Petitioner was eventually detained in the interior of the nation, her initial encounter with United States officials came when she first crossed into the United States—that is, when she "arrive[d] in the United States," as reflected in her immigration file deeming her an "arriving alien." 8 U.S.C. § 1225(a)(1). And as Petitioner herself acknowledges, she applied for admission, Doc. 10 at 3, and the immigration officer determined she was "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Petitioner thus is an "applicant for admission" subject to mandatory detention. The passage of time does nothing to change that: Petitioner has not withdrawn her application for admission and conceded removability; she is still actively seeking admission and in fact has filed a new application, this time for asylum. Doc. 1 at 3. Nor does it matter that Petitioner was "paroled into the United States": Petitioner acknowledges that parole is not admission, and it therefore does not turn an "applicant for admission" who is "seeking admission" into something else. Doc. 10 at 2. Indeed, the very statute Petitioner cites confirms not only that parole is not admission but also that it does not permanently displace the other governing provisions, including Section 1225(b)(2)(A):

> [S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland

Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and shall thereafter continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Indeed, the very fact of parole confirms that Petitioner is an "applicant for admission" as defined in the statute, as the cited parole provision applies only to aliens applying for admission. *Id.*

Petitioner thus falls without *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of "applicants for admission" subject to mandatory detention under Section 1225(b)(2)(A).

## II.    Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

The exhaustion doctrine does not bar review of Petitioner's constitutional claim because the BIA cannot adjudicate it. *See Smith*, 171 F.4th at 810; *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citations omitted). But Petitioner's constitutional claim fails on the merits.

Petitioner argues that her "continued detention without a bond hearing violates" the Constitution as constructed in Supreme Court decisions "recogniz[ing] limits on prolonged detention and the necessity of custody reviews." Doc. 1 at 3. Here again, the Court is bound to faithfully adhere to *Lopez-Campos*, where (in the context of addressing detention deemed to fall under Section 1226(a)) the Sixth Circuit held that: (1) despite *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the entry fiction "does not control" when an alien has "resided within the United States for years," and (2) "the Due Process Clause requires an individualized bond hearing" where "immigration detention becomes needlessly prolonged and appears no longer to effectuate the regulatory goals of civil immigration detention." 2026 WL 1283891 at *12.

Accepting those holdings, and making the highly questionable assumption that Petitioner's roughly one year residing in the interior of the nation while on parole takes her outside of

6

*Thuraissigiam* even under the Sixth Circuit's understanding of that decision, Petitioner still has not shown a violation of due process. The Sixth Circuit in *Lopez-Campos* explicitly held that the calculus is different where—as here—Congress has specifically called for mandatory detention. *See id.* at *13 ("*Demore* [*v. Kim*, 538 U.S. 510 (2003)] . . . concluded that mandatory detention under Section 1226(c) without an initial individualized bond determination did not violate a noncitizen's procedural due process rights."). And even if the Due Process Clause did impose a time limit on detention without a bond hearing pursuant to a mandatory detention statute, Petitioner has not identified any binding authority establishing, or even made any argument supporting the proposition that her five months' detention—with a status report in less than three weeks—would fall on the unconstitutional side of the line. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *cf. Zadvydas*, 533 U.S. at 701 (in context of statute allowing discretionary detention pending removal, holding as matter of constitutional avoidance that six months' detention is presumptively unreasonable if there appears to be no likelihood alien will actually be removed). Absent argument and authority supporting that surprising result, this Court has no authority to impose it on the political branches. Petitioner's constitutional argument therefore fails.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.** The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 30th day of May, 2026.

s/ *Brian C. Lea*

BRIAN C. LEA
UNITED STATES DISTRICT JUDGE